IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CENTRO CRISTIANO COSECHA FINAL, §
INC., §
§
              Plaintiff, §
§
VS. §   CIVIL ACTION H-10-1846
§
THE OHIO CASUALTY INSURANCE §
COMPANY and KIRK ALWYN GRESHAM, §
§
              Defendants. §

## OPINION AND ORDER DENYING REMAND

Pending before the Court in the above referenced action, arising out of alleged mishandling of an insurance claim for damage caused by Hurricane Ike on September 13, 2008 to property located at 8823 Frey Road in Houston, Texas (the "Property"), and removed under 28 U.S.C. §§ 1441(a) and 1332(a) from the 334th Judicial District, Harris County, Texas, is Plaintiff Centro Cristiano Cosecha Final, Inc.'s opposed motion to remand (#5) for lack of diversity subject matter jurisdiction on the grounds that Defendant Kirk Alwyn Gresham ("Gresham") was properly joined.

It is undisputed that Plaintiff is a not-for-profit corporation and church, domiciled in Houston, Texas. Defendant the Ohio Casualty Insurance Company ("Ohio") is a foreign insurance company, incorporated in the State of Ohio, with its principal place of business in Fairfield, Ohio. Defendant Gresham is a Texas

-1-

resident.  The amount in controversy is over $75,000.

The Property was insured by commercial insurance policy number BZO(09) 53 08 11 79 (the "Policy"), issued by Ohio.  Plaintiff's Original Petition (Ex. B to #1, Notice of Removal) asserts that after Plaintiff made a claim and demand for payment under the terms of the Policy, Ohio purportedly assigned its agent and/or employee Gresham as the adjuster for the claim.  Plaintiff charges that Defendants failed to comply with the Policy, with the Texas Insurance Code, and with Texas law in handling the claim and wrongfully refusing to pay all amounts due and owing.

After reviewing the Original Petition, the parties' briefs, the record, and the applicable law, for the reasons stated below the Court finds that Gresham was not improperly joined because the Court cannot conclude that Plaintiff has no reasonable possibility of recovering against the in-state adjuster Gresham in state court. *Blanchard v. State Farm Lloyds*, 206 F. Supp. 2d 840, 846-48 (S.D. Tex. 2001).  Thus the motion to remand should be granted.

### Allegations in the Original Petition

Against Defendant Ohio alone Plaintiff alleges breach of contract, violation of the prompt payment of claims provisions of Texas Insurance Code § 542.051 *et seq.*, and breach of duty of good faith and fair dealing/bad faith.  Against both Defendants Plaintiff charges engaging in unfair settlement practices in violation of Texas Insurance Code § 541.060(a), violations of the

Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41 *et seq.*, and common law fraud.

Regarding the unfair settlement practices claim in violation of Texas Insurance Code § 541.060(a) against Gresham, the Original Petition states that under the Policy he was required, but failed, to conduct a thorough and reasonable investigation of Plaintiff's claims, including quantifying the damage to the structure of its business and its business personal property loss.  He allegedly undervalued the claim and misrepresented material facts to Plaintiff, i.e., the Policy provisions relating to coverage and the actual value of Plaintiff's covered loss, and he failed to provide Plaintiff with a reasonable explanation why Ohio was underpaying Plaintiff for the covered losses and denying the claim or offers of a compromise settlement.  Gresham also purportedly failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim despite the fact that Ohio's liability under the Policy was reasonably clear.[1]

_____

[1] The Original Petition asserts some of the same allegations against Ohio (i.e., misrepresenting material facts or policy provisions relating to coverage of Plaintiff's claim, failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement despite Ohio's reasonably clear liability, failing to provide a reasonable explanation of the basis in the policy for its denial of the claim or offer of a compromise settlement), but it charges Gresham alone with failure to conduct a reasonable investigation and undervaluing Plaintiff's claim and Ohio alone with failing in a reasonable time to affirm or deny coverage or submit a reservation of rights and with refusing to pay the claim without conducting a reasonable investigation of it.

-3-

For Plaintiff's DTPA claim, the Original Petition states that Gresham and Ohio jointly

> a) Represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;
>
> b) Represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;
>
> c) Failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;
>
> d) Generally engaged in unconscionable courses of action while handling the Claim; and/or
>
> e) Violated the provisions of the Texas Insurance Code described above.

Finally, regarding the common law fraud cause of action, the Original Petition recites against both Defendants, jointly, that they "knowingly or recklessly made false representations as to material facts and/or knowingly concealed all or part of the material information from Plaintiff with the intent of inducing Plaintiff to accept a denial and/or underpayment of insurance benefits" and "allowed Plaintiff to use this information or lack thereof, in justifiable reliance in accepting the denial and/or underpayment."

### Relevant Law

Under 28 U.S.C. § 1441(a)[2] any state court action over which federal courts would have original jurisdiction may be removed from state to federal court. *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 282 (5th Cir. 2007; *Guttierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)("A district court has removal jurisdiction in any case where it has original jurisdiction.").

The right to remove depends upon the plaintiff's pleading at the time of the petition for removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939); *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir. 1995); *Ford v. Property & Cas. Ins. Co. of Hartford*, No. Civ. A. H-09-1731, 2009 WL 4825222, *2 (S.D. Tex. Dec. 9, 2009).

The removing party bears the burden of showing that subject matter jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts are construed against removal because the removal statute is strictly construed in favor of remand. *Id.*

Under 28 U.S.C. § 1441(b), when original federal jurisdiction is based on diversity, as is claimed by Defendants here, a

---

[2] Title 28 U.S.C. § 1441(a) states, "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

defendant may remove a state court civil action only "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  The doctrine of improper joinder, or fraudulent joinder,[3] prevents defeat of federal removal jurisdiction premised on diversity by the presence of an improperly joined, non-diverse defendant.  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).  Citizenship of an improperly joined party is totally disregarded in determining the court's subject matter jurisdiction.  *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2003).

Improper joinder may be established by showing (1) actual fraud in the pleading of jurisdictional facts or (2) an inability to establish a cause of action against the non-diverse defendant in state court.  *Gasch*, 491 F.3d at 281; *Smallwood*, 385 F.3d at 573.  The latter situation is asserted here.  Defendants claiming improper joinder based on the second type bear a heavy burden of showing that there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., in other words that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant.  *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Smallwood*, 385 F.3d at 576.  A "reasonable

---

[3] The Fifth Circuit prefers the term "improper joinder" to "fraudulent joinder" because it is more consistent with the statutory language in 28 U.S.C. §§ 1141 and 1332.  *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 and 572-73 (5th Cir. 2004)(*en banc*), *cert. denied*, 544 U.S. 992 (2005).

basis" means more than a mere a hypothetical basis. *Griggs v.
State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)("whether the
plaintiff has stated a valid state law cause of action depends upon
and is tied to the factual fit between the plaintiffs' allegations
and the pleaded theory of recovery").

To determine whether a plaintiff has a "reasonable basis for
recovery under state law, the court may "conduct a Rule 12(b)(6)-
type analysis." *Smallwood*, 385 F.3d at 573; *Anderson v. Georgia
Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009).  First
the court should look at the pleadings to determine whether the
allegations state a claim under state law against the in-state
defendant. *Smallwood*, 385 F.3d at 573.  If the "plaintiff has
stated a claim, but has misstated or omitted discrete facts that
would determine the propriety of joinder," the court may look
beyond the pleadings and consider summary judgment-type evidence.
*Georgia Gulf*, 342 Fed. Appx. at 915-16.  Discovery should be
restricted and the summary inquiry should be limited to identifying
"discrete and undisputed facts that would bar a plaintiff's
recovery against an in-state defendant; anything more risks 'moving
the court beyond jurisdiction and into the resolution of the merits
. . . .'" *Id.* at 916, *quoting Smallwood*, 385 F.3d at 573-74.  A
defendant may submit and the court may consider affidavits and
deposition transcripts in support of the defendant's removal
petition. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5[th]

-7-

Cir. 1990).  Furthermore, where the reasons for finding that there is no reasonable basis for recovery against the in-state defendant would also dispose of all claims against the diverse defendants, the entire case should be remanded because "there is no improper joinder; there is only a lawsuit lacking merit." *Id.* at 574.

Moreover, "the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of th entire case to state court." *Grey v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 & n.11 (5th Cir. 2004)(and cases cited therein).

The district court must resolve all contested fact issues and ambiguities of state law in favor of the plaintiff and remand. *Gasch*, 491 F.3d at 281.  The Fifth Circuit explains, since "'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.'  The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281-82, *quoting Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995).

## Plaintiff's Motion to Remand (#5)

Plaintiff argues that Ohio's "spurious" claim of improper joinder is contrary to judicial authority holding that adjusters, and therefore Gresham, can be held individually liable under the

Texas Insurance Code. *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W. 2d 482, 484 (Tex. 1998); *Gasch*, 491 F.3d at 282 (construing Texas law). Plaintiff insists that Ohio's "feigned attempt to establish that Gresham is not the adjuster" on Plaintiff's claim fails because Defendants' actions and words show that he was: he inspected the property and submitted a repair estimate to provide a basis for Ohio's inadequate award to Plaintiff. Ohio has submitted an affidavit from Gresham (Ex. D to #1)[4] that Plaintiff insists impermissibly contains only conclusions. *Cuellar v. City of San Antonio*, 821 S.W. 2d 250, 252 (Tex. App.--San Antonio 1991, writ denied)(affidavits must set forth facts that would be admissible in evidence, not legal

---

[4] In relevant part, Gresham's affidavit states,

2. On September 30, 2008 I was a contract employee with Team One Adjusting Services, Inc. ("Team One"). Team One was hired by Ohio Casualty to inspect the premises located at 8823 Frey Road, Houston, Texas (the "insured Property"). I inspected the Insured Property on or about September 20, 2008, and took photographs of the Insured Property at that time. I included the photographs in my report to Ohio Casualty.

3. At no time was I an employee of The Ohio Casualty Insurance Company or any of its affiliates. I was then and am now a contract employee of Team One Adjusting Services, Inc., an independent adjusting firm. At no point did I adjust this claim or make any claim decisions for The Ohio Casualty Insurance Company. My work was limited to inspecting the insured property and providing the carrier with a repair estimate. I was not retained by Centro Cristiano Cosecha and had no contractual relationship with them, nor was I an agent of Centro Cristiano Cosecha.

conclusions).  The Court should look beyond the label placed by Ohio on the adjuster and examine the role that Gresham actually played.  Plaintiff maintains that adjusting a claim involves inspecting the property and providing an estimate of the damages. Plaintiff points to a website reflecting that Gresham is a licensed adjuster registered with the Texas Department of Insurance.[5]

Plaintiff observes that Defendants rely on *Dagley v. Haag Engineering Co.*, 18 S.W. 3d 787, 793 (Tex. App.--Houston [14th Dist.] 2000, no pet.)(holding that an engineering firm hired by an insurer to investigate claim of hail damage to property of its insureds was not engaged in the business of insurance under the Texas Insurance Code) for the proposition that Gresham, acting as an "independent inspector/estimator," is not engaged in the business of insurance, did not owe a common law or statutory duty to Plaintiff, and is not liable under the Texas Insurance Code as a matter of law.  Plaintiff argues that *Dagley* applies only to engineering companies, and Gresham is not an engineering company.

An adjuster can be liable under the Texas Insurance Code and the DTPA.  Chapter 541 of the Texas Insurance Code, a "tie-in statute," expressly provides a cause of action for any practice "specifically enumerated in a subdivision of Section 17.46 of the DTPA."  Tex. Ins. Code § 541.151(2)(Vernon 2010).  The Texas Department of Insurance adopted section 21.21 of the Texas

---

[5] https://www.texasonline.state.tx.us/NASApp/tdi/TdiARManager.

Administrative Code to "further define" those who may be held liable under the Insurance Code ("insurers and insurance agents and other persons in their conduct of the business of insurance . . . irrespective of whether the person is acting as insurer, principal, agent, employer or employee, or in other capacity or connection with such insurer"). *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W. 2d 482, 485 (Tex. 1998)(*citing* 28 Tex. Admin. Code § 21.21). Plaintiff highlights that Chapter 541 Subchapter A of the Texas Insurance Code prohibits any "person" from engaging in deceptive practices in the business of insurance. Tex. Ins. Code Ann. § 541.003; *see also Gasch*, 491 F.3d at 282. "Person" is defined as "any individual, corporation, association, partnership . . .  and any other legal entity engaged in the business of insurance, including agents, brokers, **adjusters**, and life insurance counselors." Tex. Ins. Code Ann. § 541.002 (emphasis added). *See also Garrison Contractors*, 966 S.W. 2d at 486-87 (the definition of  a "person" engaged in the business of insurance in Chapter 541, Subchapter A, is not limited to insurers, but includes individuals and company employees, including adjusters); *Gasch*, 491 F.3d at 283-84 (an adjuster can be held liable under the Texas Insurance Code).[6]  Thus a plaintiff may

---

[6] Plaintiff explains that while *Garrison* and *Gasch* were decided under Article 21.21, Chapter 541 of the Texas Insurance Code is a recodification of Article 21.21.  Acts 2003, 78th Leg., R.S., Ch. 1274, H.B. 2922.  The Texas Legislature explicitly stated that Chapter 541 was enacted as a non-substantive revision of

bring a cause of action against an adjuster who has engaged in deceptive trade practices.

In *Fern Francis-Jackson v. Liberty Mutual Fire Ins. Co.*, No. H-10-976, *8 (S.D. Tex. June 1, 2010)(copy attached as Ex. B to #5)[7](*citing Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir.

---

Article 21.21. *Id.*

[7] The Court notes that in *Fern Francis-Jackson,* at *8 (copy attached as Ex. B to #5), the causes of action brought against the insurer and the adjuster, Karron Taylor, were virtually identical to those in the instant action.  Liberty Mutual had assigned Taylor to inspect the damaged property and estimate damages and repair costs.  The plaintiffs alleged, as causes of action against the insurer, breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violations of the DTPA, and common law fraud.  Against the adjuster they alleged violations of the Texas Insurance Code, violations of the DTPA, and common law fraud.  Judge Hittner pointed out at *8, "If there exists any possibility of recovery on even one of Plaintiffs' three claims against Taylor, the Court must remand the entire case to state court. *Gray v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004) . . . ."  The pleadings alleged,

> Plaintiffs seek damages for the losses they incurred as a result of Taylor's conduct.  Plaintiffs argue that Taylor, while acting as an insurance adjuster on behalf of Liberty Mutual, engaged in unfair settlement practices in violation of the Texas Insurance Code by failing to properly investigate Plaintiffs' claim and by knowingly misrepresenting to Plaintiffs 'the true value of Plaintiffs' covered loss.  Plaintiffs contend that these unfair settlement practices resulted in loss of compensation for the full value of Plaintiffs' covered losses under the Liberty Mutual Policy.

Taking the "facts" alleged by Plaintiffs as true, Judge Hittner found that what Defendants characterized as fact-deficient, conclusory allegations, stated at least a violation of the Texas Insurance Code because an "adjuster" is included in the definition of a "person . . . engaged in business of insurance", that Taylor was not improperly joined, and that the suit should be remanded to state court.  Ex. 2 at 8-9 to #5.  He accepted the petition as

2003)), Judge David Hittner, in a case with facts similar to those here, opined,

> Plaintiffs assert that Taylor was acting as an insurance adjuster, whereas Defendants contend she was an independent inspector, and thus cannot be held individually liable under the Texas Insurance Code. Taking these facts as alleged by Plaintiffs as true, it is possible that a Texas court could find that Taylor violated the Texas Insurance Code by engaging in unfair settlement practices as an insurance adjuster.  In other words, Plaintiffs' claims against Taylor as an insurance adjuster are sufficient to demonstrate "a reasonable possibility of recovery."

He remanded the case.

In *CD Management Corp. d/b/a US Supermarket v. National Prop. & Cas. Ins. Co.*, No. H-09-1701, *9 (S.D. Tex. July 28, 2009)(copy attached as Ex. C to #5), *citing Gasch*, 481 F.3d 282 (authorizing actions against insurance adjusters in their individual capacities), Judge Lee Rosenthal concluded that independent adjusters can be held liable in their individual capacities under the Texas Insurance Code.[8]  *In accord, Kimberly Trimmer Davis v.*

---

factually sufficient.

[8] This Court observes that in *CD Management* (Ex. C to #5) the plaintiff operated a supermarket that was damaged during Hurricane Ike and it sued Nationwide Property and Casualty Insurance Company and two adjusters, one of whom, Altonette Hogan, was an in-state, non-diverse defendant.  Plaintiff claimed damage to the building and its contents, cost of repairs, and business interruption losses and sued when Nationwide denied its claim after the insurer determined that the amount of damages was less than the deductible under the policy.  Plaintiff sued the insurer and the adjusters for misrepresenting that the damage and losses were not covered, failure to explain the reasons for the offer of an inadequate settlement, failure to affirm or deny coverage of the claim within a reasonable time, failure to perform a reasonable investigation,

*Travelers Lloyds of Tex. Ins. Co., et al.*, No. H-09-2260, * 7, 11
(S.D. Tex. Sept. 29, 2009)(Hoyt, J.)("the evidence presented tends
to show that [the independent adjuster], while acting as a 'person'
engaged in the business of insurance, *may* have contributed in some
way to the investigation and/or decision relative to the
plaintiff's claim.").[9]   Plaintiff insists that the Court should

_____

and refusal to compensate plaintiff under the terms of the Policy.
Plaintiff claimed these acts and omissions constituted unfair
settlement practices under the Texas Insurance Code.   Plaintiff
alleged breach of contract, violations of the Texas Insurance Code,
breach of good faith and fair dealing, fraud, and conspiracy to
commit fraud against Nationwide; against the adjusters it asserted
claims for violations of the Texas Insurance Code, fraud, and
conspiracy to commit fraud.   Plaintiff moved for remand arguing
that Hogan, an independent adjuster, was properly joined and the
Court therefore lacked diversity jurisdiction.
      Judge Rosenthal concluded that Texas law recognizes that
unfair insurance settlement conduct under the Texas Insurance Code
may be asserted against individual independent and corporate
adjusters (Ex. C at 6-7) and remanded the suit.

      [9] *In Davis* (Ex. D to #5), the plaintiff also sued for damage
to a residential property from Hurricane Ike after Travelers Lloyds
of Texas Insurance Company allegedly improperly handled and
wrongfully denied her claims under a Policy.   Davis asserted causes
of action for common law fraud, conspiracy to commit fraud, breach
of contract, breach of duty of good faith and fair dealing, and
numerous violations of the Texas Insurance Code against Travelers;
against the two claims adjusters, Robert Ballew and non-diverse
Eduardo Cespedes, she alleged multiple violations of the Texas
Insurance Code, common law fraud, and conspiracy to commit fraud.
After removal on diversity grounds and Plaintiff's motion to remand
on the grounds that Cespedes was properly joined and defendants
failed to meet their heavy burden to show there was no reasonable
basis for predicting that plaintiff could recover against Cespedes,
Defendants argued that plaintiff's factual allegations failed to
meet pleading requirements and were insufficient to support any
cause of action against Cespedes and were "nothing more than a
verbatim recital of the statutory provisions of the Texas Insurance
Code."   Like Judge Rosenthal, Judge Hoyt concluded that "Texas law
clearly authorizes suits against insurance adjusters in their

-14-

not conclude that there is no reasonable possibility that Plaintiff

---

individual capacities."  Many of the statute-tracking allegations
were essentially the same as those in this action against Gresham:
misrepresentations that the damage was not covered under the
Policy, failure to attempt to effect a prompt, fair and equitable
settlement of the claim, failure to explain the reasons for their
offer of an inadequate settlement, failure to affirm or deny
coverage of her claim within a reasonable time, and failure to
conduct a reasonable investigation before refusing to compensate
her under the Policy.  Defendants in *Davis* also claimed that
Cespedes did not adjust the plaintiff's claim and made no decisions
regarding coverage of her claim.

The plaintiff asserted that she had received a letter from
Cespedes stating that he was a claims representative assigned by
the insurer to review the claim and that on numerous occasions he
made attempts by telephone and letter to discuss the plaintiff's
claim with her and to arrange a re-inspection of her property if
she wished, although these documents were not before the court.
Moreover Cespedes submitted an affidavit attesting that he was a
claim representative assigned by the insurer to review the claim,
that he was responsible for inspecting the plaintiff's property,
preparing an  estimate, and issuing a payment to the plaintiff.
Judge Hoyt opined,

> "These facts, without more, indicate that Cespedes was,
> at least partly, responsible for some portion of [the
> insurer's] investigation and/or decision relative to the
> plaintiff's claim.  When resolving all factual disputes
> and ambiguities in plaintiff's favor, as this Court is
> required to do, the Court determines that the evidence
> presented tends to show that Cespedes, while acting as a
> "person" engaged in the business of insurance, *may* have
> contributed in some way to the investigation and/or
> decision relative to the plaintiff's claim.  Assuming so,
> Cespedes could *possibly* be held liable to plaintiff under
> the Texas Insurance Code.  [emphasis in original]

Ex. D at 10-11 to #5.  He remanded the case.  In his discretion he
also denied a request for attorney's fees and costs under § 1447(c)
despite the fact that "defendants have undoubtedly presented some
compelling evidence tending to establish Cespedes' limited role
with respect to plaintiff's claim," because of "the highly fact-
specific nature of the issues presented, coupled with the fact that
Texas case law on individual liability for insurance-related claims
remains unclear."  *Id.* at 14.

-15-

cannot establish a claim against the adjuster in state court. *Blanchard v. State Farm Lloyds*, 206 F. Supp. 2d 840, 846-48 (S.D. Tex. 2001)("court cannot hold that there is no reasonable possibility that Plaintiffs could establish a claim against [the adjuster] in state court"); *Tenner v. Prudential Ins. Co. of America*, 872 F. Supp. 1571, 1574 (E.D. Tex. 1994)(holding that the insured could maintain an action under the DTPA and Texas Insurance Code against the insurance agent in her individual capacity).

Ohio contends that Plaintiff failed to plead any factual allegations about Gresham that would support a cause of action against him, individually. In response Plaintiff maintains that Gresham's acts of inspection and estimation of Plaintiff's claims are clearly differentiated from alleged acts by Ohio, especially in light of Gresham's purported "independence." Moreover, paragraphs 19-23, 26, and 28-30 specify wrongful conduct by Gresham in his individual capacity:

> [¶] 19   Defendant Gresham was an adjuster assigned by Defendant Ohio to adjust the Claim, and was charged with investigating the Claim and communicating with the insured about Policy terms. Insurance adjusters are "persons engaged in the business of insurance" under the Texas Insurance Code § 541.001, *et seq.*, and are individually liable for their individual violations of the Texas Insurance Code. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W. 2d 482 (Tex. 1998).

> [¶] 20   Defendant Gresham was tasked with

the responsibility of conducting a
through and reasonable investigation
of Plaintiff's Claim, including
fully quantifying: 1) the damage to
the structure of Plaintiff's
business; and 2) Plaintiff's
business personal property losses.

[¶] 21   Defendant Gresham failed to fully
quantify Plaintiff's damages, thus
demonstrating that he did not
conduct a thorough investigation of
the Claim. This Defendant failed to
fairly evaluate and adjust
Plaintiff's Claim as he is obligated
to do under the terms of the Policy
and Texas law. By failing to
properly investigate the Claim, and
by undervaluing the claim, this
Defendant engaged in unfair
settlement practices by
misrepresenting material facts to
Plaintiff--the true value
of Plaintiff's covered loss. Defendant
Gresham also failed to provide
Plaintiff a reasonable explanation
as to why Defendant Ohio was not
compensating Plaintiff for the full
value of Plaintiff's covered losses.

[¶] 22   In summary, Defendant Gresham
individually engaged in unfair
settlement practices by:

a) Misrepresenting to Plaintiff
material facts or policy provisions
relating to the coverage at issue;

b) Failing to attempt in good faith
to effectuate a prompt, fair, and
equitable settlement of the Claim,
even though Defendant Ohio's
liability under the Policy was
reasonably clear;

c) Failing to promptly provide
Plaintiff with a reasonable
explanation of the basis in the

Policy, in relation to the facts or applicable law, for Defendant Ohio's denial of the Claim or offer of a compromise settlement of the Claim; and/or

d) Failing to conduct a reasonable investigation of Plaintiff's Claim.

[¶] 23    Each of the foregoing unfair settlement practices was completed knowingly by Defendant Gresham and was a producing cause of Plaintiff's injuries and damages.

[¶] 26    Defendants' conduct violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code, § 17.41, *et seq*. ("D.T.P.A.") by engaging in "false, misleading or deceptive acts and practices."

[¶] 28    Defendants committed numerous violations of the D.T.P.A., insofar as Defendants:

a) Represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

b) Represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

c) Failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

-18-

d) Generally engaged in unconscionable courses of action while handling the Claim; and/or

e) Violated the provisions of the Texas Insurance Code described herein.

[¶] 29    Defendants took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and to Plaintiff's detriment. Defendants' acts also resulted in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration. As a result of Defendants' violations of the D.T.P.A., Plaintiff suffered actual damages. In addition, Defendants committed the above acts knowingly and/or intentionally, entitling Plaintiff to three times Plaintiff's damages for economic relief.

[¶] 30    Defendants knowingly and recklessly made false representations as to material facts and/or knowingly concealed all or part of material information from Plaintiff with the intent of inducing Plaintiff to accept a denial and/or underpayment of insurance benefits. Defendants allowed Plaintiff to use this information, or lack thereof, in justifiable reliance in accepting the denial and/or underpayment. Plaintiffs relied upon said statements in accepting the denial and/or underpayment for the Claim, and suffered injury as a result.

Ohio argues that Plaintiff failed to allege with adequate specificity any conduct of the adjuster that would give rise to liability, citing *Johnnie Finkelman v. Liberty Manual, et al.*,

Civil No. H-09-3855 (S.D. Tex.)(Lake, J)(copy attached as Ex. a to #6).  Objecting, Plaintiff distinguishes the facts in *Finkelman* from those here: (1) the actions of Gresham were independent of, rather than coupled with, the actions of Ohio;  (2) Plaintiff differentiates the individual conduct of Gresham from that of other parties; (3) Judge Lake "pierced the pleadings" in *Finkelman* and determined from the evidence submitted that a claim could not be stated because the adjuster became involved in the case *after* the insurer received the notice letter from counsel for the insured, required under the DTPA and the Texas Insurance Code; and (4) Judge Lake decided there was no reasonable basis to predict that the adjuster could be found liable for Insurance Code violations against the plaintiff because those violations occurred before counsel sent the demand letter to the insurer.

Ohio also relies on the undersigned judge's opinion in *Jimenez v. Travelers Indemn. Co.*, 2010 WL 1257802, * 5-7 (S.D. Tex. Mar. 25, 2010), in which this Court concluded that the plaintiff failed to "differentiate between the conduct of the two defendants." Furthermore in *Jimenez* the defendant presented evidence that the in-state adjuster was not the person who actually analyzed and denied the claim.  Here as evidence there is only Gresham's conclusory statement that he did not adjust Plaintiff's claim. Ohio concedes that Gresham did investigate and estimate damages for Plaintiff's claim.

In addition Ohio cites *Lakewood Chiropractic Clinic v. Travelers Lloyds Ins. Co.*, Civ. A. No. H-09-1728, 2009 WL 3602043, *3 (S.D. Tex. Oct. 27, 2009)(Werlein, J.), in which the court concluded that the Plaintiff failed to allege "facts illustrating what actions are attributable to [the adjuster] individually." Furthermore in *Lakewood* it was undisputed that the adjuster had neither investigated nor denied plaintiff's claim, but only reviewed the claim after plaintiff sent a demand letter.  Here Plaintiff maintains it has done more than regurgitate the boiler plate of the Texas Insurance Code; the Original Petition contains several paragraphs addressing Gresham's individual behavior as an adjuster charged with investigating and adjusting Plaintiff's claim in a reasonable manner and his failure to do so.  Plaintiff has alleged that Gresham was assigned as an adjuster by Ohio to adjust Plaintiff's claim and was responsible for providing Plaintiff with a reasonable explanation as to why Ohio was not compensating Plaintiff for the full value of covered losses.  In *Lakewood Chiropractic* the adjuster had neither investigated nor denied the plaintiff's claim, but was assigned only to review it after plaintiff sent a demand letter.

Furthermore, in *Leisure Life Senior Apartment Housing II, Ltd. v. Lloyds of London*, H-09-3967, 2009 WL 3834407, *4 (S.D. Tex. Nov. 12, 2009)(copy attached as Exhibit E to #5), Judge Nancy Atlas remanded the case, writing,

-21-

> Unlike the situation in [*Lakewood Chiropractic*],
> Plaintiff here clearly differentiates between the alleged
> conduct of the insurance company and challenged conduct
> by the adjusters, specifically including [the adjuster]
> by name.   Plaintiff alleges that [the adjuster] violated
> the Texas Insurance Code in several ways, including [the
> adjuster's] failure to "attempt in good faith to
> effectuate a prompt, fair, and equitable settlement of
> the claim." . . .   These factual allegations viewed in
> the light most favorable to Plaintiff, indicated that
> Plaintiff had a reasonable basis for recovering against
> [the adjuster] in Texas state court for the alleged
> violations of the Texas Insurance Code.

Here, Plaintiff insists it has made similar allegations to those in *Leisure Life*.

Finally Plaintiff cites other recent case law contrary to the removing Defendants' position in this action:   *Ample Business Investments, L.P. v. American States Ins. Co., et al.*, Cause No. H-10-0802, (S.D. Tex. Apr. 28, 2010)(copy attached as Exhibit F to #5)(holding that the petition's language, which is similar to the Plaintiff's here, was sufficient to establish a cause of action against the individual adjuster); *Calofe Enterprises, LLC d/b/a Wilshire Apartments v. Chubb Custom Ins. Co., et al.*, Cause No. H-09-4148 (S.D. Tex. May 6, 2010)(Hoyt, J,)(copy attached as Exhibit G to #5)(remanding case because adjuster engaged in unfair settlement practices when he personally failed to quantify Plaintiff's damages, failed to conduct a thorough investigation, and failed to provide Plaintiff with a reasonable explanation why the insurer was not compensating Plaintiff for the full value of Plaintiff's losses); and *Sharman McGilbert v. Safeco Ins, Co. of*

*Indiana, et al.*, Cause No. H-10-514 (S.D. Tex. Apr. 22, 2010)(Miller, J.)(copy attached as Ex. H to #5)(remanding case because the facts established a reasonable possibility of recovery against the two adjusters on allegations that they inspected her property, issued a damage estimate that failed to fully quantify the damage done, grossly undervalued the damage estimate, and misrepresented to plaintiff the value of plaintiff's covered loss).

In sum, Plaintiff maintains that Ohio has failed to meet its heavy burden of proving that joinder of Gresham is improper, and therefore the Court must remand this action to state court.

Finally Plaintiff requests an award of costs, expenses and attorney's fees incurred as a result of the improper removal. 28 U.S.C. § 1447(c); *Gardia v. Amfels*, 254 F.3d 585, 587 (5th Cir. 2001). In deciding whether to make such an award, the court should consider the legal propriety of the removal, not the motive. Section 1447(c) is not a sanctions rule but a fee-shifting statute that permits the court to make whole the victorious party, regardless of whether the removal was in bad faith or for improper purpose. *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). Plaintiff further argues that such an award is particularly appropriate because Ohio has engaged in a consistent pattern and practice of improperly seeking removal of cases involving the joinder of insurance adjusters despite clear case law indicating that their inclusion in the lawsuit is proper under

Texas law.

### Defendants' Response (#6)

Ohio and Gresham insist that Plaintiff "has articulated only non-specific and conclusory allegations against the individual defendant, Gresham, coupled with verbatim quotations of Insurance Code boilerplate." They assert that Gresham is joined only to defeat diversity. They claim that the Original Petition fails to identify anything Gresham did wrong other than estimate the loss to be less than what Plaintiff wanted. It does not differentiate Gresham's conduct in investigating and estimating the claim from the conduct of Ohio, which bears the non-delegable duty of investigation, estimation, decision, and payment. *Garrison Contractors* held only that an insurance agent who sold an insurance policy had potential Insurance Code liability for pre-loss misrepresentations of coverage on which the policyholder detrimentally relied. 966 S.W. 2d at 483-84. Far beyond the *Garrison Contractors* rule, they represent that Plaintiff in essence argues that any adjuster or agent whose name appears in a claim file can be sued individually for bad faith without the plaintiff having to distinguish individual liability for adjusters. It is undisputed in this case that Gresham only inspected the property and provided Ohio with an estimate of damages; there is no evidence that he misrepresented the coverage in any way or that Plaintiff relied on such misrepresentations.

-24-

Defendants disagree with Plaintiff's characterization of recent cases. In *Johnnie Finkelman*, Ex. A to #6, Judge Lake "pierced the pleadings" and held that plaintiff failed to state a claim against the non-diverse individual adjuster and that Liberty Mutual met its burden of proving improper joinder of an adjuster in a Hurricane Ike suit. While recognizing that an individual adjuster may be held liable, Judge Lake found that the petition failed "to allege facts illustrating what actions are attributable to [the adjuster] individually." *Id.* at 15.[10] Judge Lake relied on similar Fifth Circuit district court decisions that held that "formulaic recitations" of Insurance Code boilerplate "that are not accompanied by specific allegations concerning actions of the individual defendant are not sufficient to create a reasonable basis to predict the plaintiff will be able to recover against the individual." *Id*. at 15-16, *citing Lakewood Chiropractic*, 2009 WL 3602043, *3 (hold that verbatim recitations of Insurance Code provisions without allegations of specific wrongful acts attributable to the individual adjuster are insufficient to state a claim against the adjuster); *Weldon Contractors Ltd. v. Fireman's Fund Ins. Co.*, No. 4:09-CV-165-A, 2009 WL 1437837, *3-4 (N.D. Tex. May 22, 2009)(finding improper joinder where allegations listing Insurance Code provisions and alleging that both defendants

---

[10] This Court notes that unlike in the instant case in *Finkelman*, **all** the allegations were against Liberty and the adjuster jointly-never against just one.

violated them were merely "legal conclusions couched as factual allegations" and stating that the plaintiff failed to allege facts showing that the adjuster performed any act that could be a violation of these provisions); *First Baptist Church of Mauriceville, Tex. v. GuideOne Mutual Ins, Co.*, No. 1:07-CV-988, 2008 WL 4533729, *6 (E.D. Tex. Sept. 29, 2008)(finding that the petition's listing of violations of the Insurance Code committed by the insurance company and then incorporating those violations against the adjuster failed to state a claim against the adjuster because "[n]o specific code violations are attributed to [the adjuster] . . . . Ultimately, all allegations are conclusory, wholly lacking specific factual support, and merely assert that [the adjuster] violated the Texas Insurance Code"); *Frisby v. Lumbermens Mut. Cas. Co.*, Civ. A. No. H-07-015, 2007 WL 2300331, *4 (S.D. Tex. Feb. 20, 2007)(holding that a complaint alleging joint violation of statutory provisions of the Insurance Code by the insurance company and the adjuster did "not sufficiently separate those actions attributable to [the insurance company] from those attributable to [the adjuster]").[11]  *See also Broadway v. Brewer*,

_____

[11] This Court notes that the *Frisby* court at *4, in response to the plaintiff's insistence that the original petition satisfied the notice requirements set forth in the Texas Rules of Civil Procedure, followed *Smallwood*'s endorsement of a Rule 12(b)(6)-like summary inquiry, pierced the pleadings, observed the plaintiff failed to produce any evidence that the insurer's employee, Karen LaFleur, had any individual involvement in denial of a claim, and concluded on the basis of the defendant's evidence that LaFleur was improperly joined because it demonstrated that she never made any

No. 4:08CV475, 2009 WL 1445449 (E.D. Tex. May 21, 2009)(denying remand because petition merely alleged that Defendants made misrepresentations in violation of the DTPA and the Texas Insurance Code without identifying "a single statement or specific misrepresentation made by [the adjuster]").

Defendants note that the plaintiff in *Finkelman* sought remand on the grounds that the adjuster wrongfully denied and/or underpaid portions of the claim:

> 4.6.   Liberty and Ms. Dinkins wrongfully denied Ms. Finkelman's claim for property repairs. Furthermore, Liberty and Ms. Dinkins underpaid some of Ms. Finkelman's claims by not providing full coverage under the Policy as well as underestimating damages during the investigation. Defendants have chosen to continue to deny timely payment of damages to the home.

Judge Lake found that the allegations "failed to state specifically what actions Dinkins took that caused harm to Finkelman" and that to demonstrate a reasonable possibility that a Texas court would allow recovery against the adjuster, the plaintiff had to demonstrate that Dinkins, as an individual, committed the violation that caused the harm. #6, Ex. A at 17, *citing Hornbuckle v. State Farm, Lloyds,* 385 F.3d 538, 544 (5th Cir. 2004).   Judge Lake also pierced the pleadings and reviewed an affidavit showing that Dinkens was not the adjuster who handled Finkelman's claim. *Id.* at 18.   Judge Lake found that Dinkins' limited involvement did not

untrue statements to Plaintiff, never failed to tell him an important fact, and never made a statement that led him to a false conclusion.

constitute a reasonable basis to predict that Finkelman could prove any claim against the adjuster under the Insurance Code and denied the motion to remand.   Here, Defendants urge, Plaintiff has provided no more specificity

Defendants note that in *Jimenez*, 2010 WL 1257802 at *5-6 (Ex. B to #6), this Court required the insured plaintiff to articulate and differentiate the conduct of the individual adjuster from that of the carrier.  It found that the petition failed to assert facts showing how and when the adjuster violated the law and to distinguish the conduct of the two defendants.   Although highlighted as factors in *Garrison Constructors*, this Court concluded that the petition did not allege that the adjuster sold the policy or explained the policy terms or premium calculations to the purchasing plaintiffs or that the adjuster was a sales agent or sales adjuster on the claim.  The only allegation attempting to differentiate Ohio and Gresham is that Graham was "independent," but that claim also states a conclusion and nothing more.  Without citing any authority, Defendants complain that Plaintiff conclusorily alleges that while Gresham was charged with investigating the claim, communicating with the insured about coverage and policy terms,[12] and accurately evaluating the damage,

---

[12] Defendants claim, "This is nothing more than the job description of any adjuster in the property insurance industry. This allegation does nothing to distinguish Gresham from any other adjuster and does nothing to distinguish Gresham's duties or conduct from that of Ohio Casualty."  #6 at 11.

but that these duties are also the duties an insurance carrier owes its insured in all first-property cases and therefore are indistinguishable from Ohio's allegedly wrongful conduct.  The petition fails to allege any specific wrongful conduct by Gresham, individually.

The Court may also pierce the pleadings.  The undisputed facts stated in Gresham's affidavit (Ex. D to #1) establish that Gresham "was not the adjuster who handled [the] claim during the time in which the alleged violations of the Insurance Code occurred." *Finkelman* at 18.  As in *Finkelman*, Gresham here is not the adjuster who made coverage decisions or communicated with the insured about those decisions; instead he was involved only in the initial evaluation of the claim, and he had no communications with the insured after that and no involvement in the ultimate denial of the interior damage claims or the decision about what damage to cover or in the payment of interior and exterior repair costs.

Defendants further contend that the fraud allegations are facially inadequate because the Petition only recites the elements of a fraud claim, but no facts.  While the Petition does conclusorily state that Gresham misrepresented "the true value of Plaintiffs['] covered loss" and policy provisions relating to the coverage at issue, since Gresham had no contact with Plaintiff until after the loss these claims relate to post-loss representations, which Texas courts consistently hold do not give

-29-

rise to DTPA or Insurance Code liability, especially when they pertain to coverage.  *See, e.g., Provident Am. Ins. Co. v. Castaneda*, 988 S.W. 2d 189, 200 & n.55 (Tex. 1990); *Royal Glove Ins, Co, v. Bar Consultants, Inc.*, 577 S.W. 2d 688, 694-95 (Tex. 1970).  Therefore Plaintiff cannot prove any set of facts that would support a fraud claim against Gresham.

Finally Defendants insist that awarding attorney's fees against Ohio for removing this case under 28 U.S.C. § 1447(c) is "ludicrous."  Such an award of fees and costs is permitted only when the removing party lacked an "objectively reasonable basis for the removal.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

In sum, because there is no specific allegation of actionable conduct, there is no "factual fit" between Plaintiff's allegations and the theories of recovery pled against Gresham.  Thus the Court should deny the motion to remand because Gresham was improperly joined and his citizenship does not defeat this court's diversity jurisdiction.

## Court's Decision

There is no dispute here that in addition to an insurer, as a matter of law an adjuster may be found liable in his individual capacity for deceptive or misleading acts in violation of the Texas

Insurance Code and the DTPA.  *Garrison Contractors*, 966 S.W. 2d at 486; *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). Both statutes apply to "any person" who commits one of their prohibited acts or practices.  Tex. Ins. Code Ann. §§ 541.002-.003; Tex. Bus. & Com. Code Ann. § 17.50; *Blanchard*, 206 F. Supp. 2d at 845.   District courts within the Fifth Circuit have also found that a plaintiff can sue an adjuster in his individual capacity for common law fraud.  *See, e.g., Leisure Life*, 2009 WL 3834407 at *2; *Lakewood Chiropractic Clinic*, 2009 WL 3602043 at *2.

Rather, the issue is whether Defendants have shown that there is no reasonable basis to predict that state law would allow recovery against the in-state defendant Gresham.  *Smallwood*, 385 F.3d at 573.  In essence Defendants have argued that the pleadings, though tracking statutory boiler plate, are factually deficient and fail to state a cause of action against Gresham and Plaintiff has failed to file any admissible evidence that "fills the gap."

In federal court the standard for stating a claim for which relief may be granted is controlled by Federal Rules of Civil Procedure Rule 12(b)(6), 8 and, in the case of fraud, 9, and the case law addressing them.   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*,556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"), *citing Twombly*, 127 S. Ct. at 1974).  *See also Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, *14 (S.D. Tex. Jan. 31, 2008).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, ____ F.3d ____, No. Civ. A. L-08-39,

2010 WL 3081504, * 3 (5th Cir. Aug. 9, 2010), *quoting Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  *Montoya*, 2010 WL 3081504 at * 3, *quoting Twombly*, 550 U.S. at 555, 570.

Furthermore, the plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ."  *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

The issue of improper joinder here is complicated by the substantial difference in pleading standards between Federal and Texas Rules of Civil Procedure.  Pleading standards are far more lenient in Texas state court, as summarized in 1 Tex. Prac. Guide Civil Pretrial § 5:39 (Database updated through September 2010):

> A petition is sufficiently pleaded if one can reasonably infer a cause of action or defense from what is specifically stated. *Boyles v. Kerr*, 855 S.W. 2d 593, 601 (Tex. 1993); *In re Credit Suisse First Boston Mortgage Capital, LLC*, 273 S.W. 3d 843, 850 (Tex. App.--Houston [14[th] Dist.] 2008, orig. proceeding)(petition can be sufficient if a claim reasonably may be inferred from what is specifically stated, and thus, a petition is not necessarily defective even if the plaintiff has not specifically alleged one of the elements of a claim); *In re P.D.D.*, 256 S.W. 3d 834, 939 (Tex. App.--Texarkana

-33-

2008, no pet.); *San Saba Energy, L.P. v. Crawford*, 171 S.W. 3d 323 (Tex. App.--Houston [14th Dist.] 2005, no pet.); *Tull v. Tull*,159 S.W. 3d 758, 762 (Tex. App.-Dallas 2005, no pet) . . . . *Woolam v. Tussing*, 54 S.W. 3d 442. 448 (Tex. App.--Corpus Christi 2001, no pet.)(pleadings will generally be construed as favorably as possible to the pleader; the court will look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged, and every fact will be supplied that can reasonably be inferred from what is specifically stated) . . . .

*See also* 58 Tex. Jur. 3d Pleading § 102 (Database updated October 2010)("In the absence of a special exception, a pleading will be construed liberally in the pleader's favor, and every reasonable intendment will be indulged in favor of the pleading.  The court will seek to discover the intendment of the pleader; and the pleading may be upheld even if some element of the cause of action or defense has not been specifically alleged.  Every fact will be supplied that may reasonably be inferred or regarded as being implied by what is specifically stated.")(footnote citations omitted).[13]

---

[13]   Texas Rules of Civil Procedure 45 and 47 embody such liberal construction.  Rule 45 in relevant part states that pleadings shall

(b) consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense.  That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole . . .

All pleadings shall be construed so as to do substantial justice.

As discussed in *KIW, Inc. v. Zurich American Ins. Co.*, No. Civ. A. H-05-3240, 2005 WL 3434977, *3 (S.D. Tex. Dec. 14, 2005),

> "Texas follows a 'fair notice' pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial." *Penley v. C.L. Westbrook*, 146 S.W. 3d 220, 232 (Tex. App.--Fort Worth 2004 (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W. 3d 887, 896 (Tex. 2000)), [*rev'd on other grounds*, 231 S.W. 3d 389 (Tex. 2007)]. "The test of the 'fair notice' pleading requirement is whether an opposing attorney of reasonable competence, with pleadings before him, can ascertain [the] nature and basic issues of controversy and testimony probably relevant." *City of Alamo v. Casas*, 960 S.W. 2s 240, 251 (Tex. App.--Corpus Christi 1997, pet. denied). "A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader basis his claim." *Auld*, 34 S.W. 3d at 897. A party's pleadings are to be construed liberally in favor of the pleader. *Id.*

*Id.* (concluding that while the factual allegations in the petition were generic and minimal, the pleading met Texas' fair notice pleading standard and that as a matter of law all the asserted causes of action could be brought against an insurance agent defendant). *See also Urquilla v. Allstate Texas Lloyd's*, No. Civ. A. No. H-10-648, 2010 WL 3447591, *2-3 (S.D. Tex. Aug. 30, 2010)(citing *KIW* and holding that Plaintiff's allegations stated a claim under state law against a non-diverse defendant even though they only alleged the technical elements of a cause of action without factual support; concluding that the claims, if proven,

---

Rule 47(a) requires "A short statement of the cause of action sufficient to give fair notice of the claim involved."

created the reasonable possibility that Plaintiffs could prevail on these claims and thus there was no improper joinder).

Because the Original Petition here was pleaded in Texas state court in accordance with the Texas pleading standard, it would be unfair to hold it to the more stringent standard in federal court.

Because determining whether an adjuster may be found liable in his individual capacity for deceptive or misleading acts, also key here is the definition and nature of the work done by an "adjuster" according the Texas Insurance Code Ann. § 4101.001(a)(1), which in relevant part (emphasis added by the Court) provides

"[A]djuster" means an individual who:

(1)  **_investigates or_** adjusts losses on behalf of an insurer as an independent contractor or as an employee of:

      (A) an adjustment bureau;
      (B) an association;
      (C) a general property and casualty agent or personal lines property and casualty agent;
      (D) **_an independent contractor_**;
      (E) an insurer; or
      (F) a managing general agent;

Gresham undisputedly, as an independent contractor, investigated and prepared a report for Ohio regarding the damage to Plaintiff's property for purposes of insurance coverage and thus qualifies as an "adjuster" under the Code.  As noted earlier, an "adjuster" is expressly listed as one of the class of persons that engages in the business of insurance under Texas Insurance Code § 541.002(2).  Moreover, the Texas Supreme Court has specifically

-36-

held that "[t]he business of insurance includes the investigation of claims and losses." *Vail v. Texas Farm Bur. Mutual Ins. Co.*, 754 S.W. 2d 129, 132 (Tex. 1988).  Finally the Fifth Circuit held that an independent insurance adjuster that services insurance policies for an insurer "engages in the business of insurance" and can be held individually liable under the Texas Insurance Code. *Gasch*, 491 F.3d at 282.

As an initial inquiry, the court must ask whether it appears from the Original Petition that the plaintiff actually intended to sue the non-diverse defendant, i.e., whether "the record . . . support[s] any inference that the [plaintiff] intended to actively pursue claims" against Gresham.  *Griggs*, 181 F.3d at 699.  Factors for the Court to consider include whether the defendant is merely minimally mentioned, whether he was ever served, and whether any actionable claims are specifically alleged against him.  Gresham is identified in the Original Petition by name, and he was served. Specified paragraphs in the petition are directed to him, but for the most part they merely track the statutory provisions, alleging only that Gresham inspected the Property and that he submitted an undervalued repair estimate to Ohio.  These actions can be accomplished by Ohio through an agent, and as such, are indistinguishable from Ohio's actions.  When the Court pierces the pleadings, the evidence submitted in Gresham's affidavit, which states his work "was limited to inspecting the insured property and

-37-

providing the carrier with a repair estimate," demonstrates that his work did satisfy the statutory and case law definitions of an adjuster, but it does not, apart from the conclusory allegations that his estimate was "undervalued," allege he did anything to make a case against him.  No specific misrepresentation by Gresham to Plaintiff is pleaded, and the fraud claim has no foundation. Plaintiff's conclusory claim against Gresham, individually, for insufficient investigation and undervaluing the claim, incorporated into a report to Ohio, is insufficient to establish the possibility of a claim against him individually for violation of the Texas Insurance Code § 541.060(a), the DTPA, Business & Commerce Code §§ 17.41 *et seq.*, and common law fraud.

Accordingly, for these reasons the Court finds that Gresham was improperly joined to defeat diversity and

ORDERS that Plaintiff's motion to remand is DENIED.

**SIGNED** at Houston, Texas, this 20th day of January , 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE